# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In Re: Goldblatt's Bargain Stores, Inc. | ) | CHAPTER 7 |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| David P. Leibowitz, Trustee | ) | No. 04 C 3024/04 C 3025 |
| Plaintiff | ) | HONORABLE DAVID H. COAR |
| v. | ) | |
| Great American Group, Inc. | ) | |
| LaSalle Bank, N.A. | ) | Bankruptcy Case No. 02 B 43578 |
| Defendants | ) | Bankruptcy Adv. No. 03 A 2234 |
| | ) | |
| | ) | Appeal From the Honorable |
| | ) | Judge Eugene R. Wedoff |

## MEMORANDUM OPINION AND ORDER

This matter comes before this Court on Appellant LaSalle Bank, N.A.'s appeal from the United States Bankruptcy court, where judgment was entered in favor of Great America Group, Inc. Great America Group, Inc. files a cross appeal.

**Facts**

Goldblatt's Bargain Stores, Inc. ("Goldblatt's") operated six retail stores in the Chicago area prior to its bankruptcy filing. LaSalle Bank, N.A. ("LaSalle) was Goldblatt's primary lender and held a security interest in substantially all of Goldblatt's assets, including its inventory. Goldblatt's financial situation worsened in early 2003, and in January 2003, it decided to liquidate its inventory and close two of it stores ("January Stores"). Goldblatt's retained Great American Group, Inc. ("GAG") to liquidate the remaining merchandise in the January Stores.

Accordingly, GAG and Goldblatt's entered into an agreement (the "January Agency Agreement") whereby GAG paid for and liquidated Goldblatt's merchandise for the two stores.

The terms of Goldblatt's loan documents with LaSalle required that LaSalle consent to this process since Goldblatt's debt to LaSalle was secured by Goldblatt's inventory. The parties sought and obtained LaSalle's consent to the liquidation in a two-page letter agreement (the "January Letter Agreement"). The January Letter Agreement provided that LaSalle would subordinate its security interest in Goldblatt's merchandise as consideration for GAG making an initial estimated payment of 75% of the Guaranteed Amount, which was 40% of what GAG estimated the retail value of the stores' inventory to be. GAG would then receive all the proceeds of the stores' sales following the completion of the physical inventory process. The parties agreed that a third party appraiser, Washington Inventory Service, would determine the ultimate value of the inventory, and if the value of the inventory fell below a certain amount, GAG would be reimbursed for a portion of the Guaranteed Amount. Transfers of merchandise out of the January stores were limited to those in the ordinary course of business.

On or about January 17, 2003, GAG paid LaSalle 75% of the Guaranteed Amount and took over operations of the January stores. Before the physical inventory process began, Goldblatt's transferred $475,000 (at cost) in inventory from its four remaining stores to the January Stores. Both GAG and Goldblatt's knew of the transfer, but neither informed LaSalle. The January transfers were included in the physical inventory, inflating the value of the January Stores' inventory.

In February 2003, Goldblatt's and LaSalle met to discuss the closing of the four remaining Goldblatts' stores, and whether to use Hilco as a possible liquidator. It was decided

that GAG would again liquidate the merchandise of the four remaining stores (the "February Stores"). Goldblatt's and GAG entered into another agreement whereby GAG paid for and liquidated Goldblatt's merchandise for the February Stores (the "February Agency Agreement"). As with the January agreements, LaSalle still held a security interest in the merchandise, and its consent was required to undertake this process. LaSalle granted its consent with similar terms to the January Letter Agreement in a letter agreement dated February 14, 2003 (the "February Letter Agreement"). In the February Letter Agreement, LaSalle agreed to subordinate its security interest to GAG as consideration for the initial estimated payment by GAG of 85% of the Guaranteed Amount, which was set as 43% of the retail value of the merchandise. If the sum of the value of the inventory and gross rings fell below $6,075,000, GAG would be refunded a portion of the Guaranteed Amount, as calculated pursuant to the February Agency Agreement.

Unlike the January inventory count (which included the transfer), the February inventory produced a severe shortfall between the estimated retail value of the inventory and its actual retail value. The difference between the initial payment GAG made based on the estimated value of the inventory for the February Stores, and what GAG was required to pay, based on the actual value, resulted in an overpayment by GAG to LaSalle of $1,095,848. GAG requested that LaSalle return this overpayment, and LaSalle refused.

In July, 2003, the Trustee for Goldblatt's filed a Chapter 7 adversary complaint against defendants GAG and LaSalle. After a trial on the merits, the Bankruptcy court found that GAG had failed in a duty to disclose the transfer to LaSalle, resulting in fraudulent inducement. However, LaSalle was unable to prove damages, and thus the court could not award remedy to LaSalle. As such, the Bankruptcy court enforced the February Agreements and ordered LaSalle

to pay $1,086,094.68 to GAG, after allowing for credits to LaSalle for fixtures. This amount represented GAG's overpayment of the estimated initial payment for inventory in the February stores pursuant to the formula set forth in the February Agreements. LaSalle appeals to this court in June 2004, and GAG files a cross appeal. GAG seeks review of (1) the materiality of the transfer of inventory; and (2) whether GAG owed LaSalle a duty to disclose. LaSalle seeks review of (1) the judgment against LaSalle for the "overfunded amount" despite the Bankruptcy court's finding of fraudulent inducement in the February Letter Agreement; (2) the finding that GAG did not owe LaSalle a fiduciary duty under the February Letter Agreement; and (3) the lack of credit to LaSalle of $377,303.10, representing the amount GAG received from Goldblatt's inventory in which LaSalle had a first priority security interest.

**Legal Standard**

On appeal in district court, a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004). "Where both the relevant law and the specific facts are clear, and the job of the bankruptcy court was to apply the law to the facts in the case, we reverse that court's conclusion only if clearly erroneous." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002).

**Analysis**

It should be noted at the outset that this case arises in a peculiar context. GAG and the Trustee are seeking, among other things, to recover the "Refunded Amount" from LaSalle pursuant to the February Letter Agreement. For his part, the Trustee is apparently motivated by the fact that if LaSalle is forced to return those funds to GAG, LaSalle will have only an unsecured claim against the estate. If, however, LaSalle is able to defeat the agreement and keep the funds, GAG may well have a priority administrative claim. LaSalle, in possession of the funds, is content to "play defense."

A. <u>Materiality</u>

GAG claims that, even if GAG owed a duty to LaSalle to disclose the transfer of inventory, the transfer was not a material fact. GAG cites *Huls v. Clifton* in arguing that am omission cannot constitute a material misrepresentation unless the concealed information was such that the other party would have acted differently had he been aware of it. *Huls v. Clifton, Gunderson & Co.*, 179 Ill. App. 3d 904, 909 (Ill. App. Ct. 1989); *Abrams v. Resolution Trust Company*, 1992 WL 137650 (N.D. Ill. 1992). GAG contends that LaSalle did not present evidence, and the Bankruptcy court made no finding, that LaSalle would have acted differently had it known about the transfer.

In *Huls*, the court concluded that the allegations were insufficient because the plaintiff did not "allege" or "state" that they could have acted differently had they known of the omitted information. 179 Ill. App. 3d at 909. In *Abrams*, the court found that the plaintiffs "asserted no reason" why the information would have caused them to alter their decision. In the present case, LaSalle has alleged several times that it would have acted differently had it known of the transfers. LaSalle's Vice President Michael Etienne testified in the bankruptcy proceeding that

La Salle would not have agreed to the over-funding clause in the letter agreement (Tr. 2/23/04, Etienne at 116-118), it would not have signed the February letter agreement if it had known there was less than $6 million in inventory in the remaining four stores (Tr. 2/23/04, Etienne at 123-124), and that it would have opened up competition to Hilco as an alternative to GAG (Tr. 2/23/04, Etienne at 135-36). Etienne explained the reasons why LaSalle would have acted differently had it known of the transfers and shortfall of inventory. Specifically, he testified that had La Salle known of the transfers that fact would have suggested that the inventory figures that Goldblatt's had been providing to La Salle were incorrect, and that La Salle was under funded on its (asset based) advances. Therefore, La Salle would have insisted on a physical inventory that would have disclosed the extent of the overstatement of inventory. Armed with that information, La Salle might have insisted on a different method of liquidating the inventory. As such, LaSalle did advance testimonial evidence that it would have acted differently, and the transfer is material under *Huls*.

GAG asserts that the court found the transfer amount to be "significant" because it was 14-15% of the January Stores' inventory, and that it should be more properly calculated to be 6.6-7.5% of the February Stores' inventory, which GAG argues is insignificant. The question of whether or not the court found the amount to be significant is not on point. The question of materiality as set forth by *Huls*, is whether LaSalle would have acted differently had it known of the omitted information. As discussed above, LaSalle has asserted reasons why it would have acted differently. The issue of proving damages resulting from an alleged fraud is a separate element in the action. Thus, because LaSalle offered evidence that it would have acted

differently had it known of the undisclosed information, the Bankruptcy Judge could reasonably have found so.

B. Duty to Disclose and Fraudulent Inducement

Under Illinois law, a party fraudulently induced into signing a contract is, as a general matter, entitled to rescind the deal. *Equity Capital Corp. v. Kreider Transp. Service, Inc.*, 967 F.2d 249 (7th Cir. 1992). Illinois courts have considered a party's failure to disclose material information (i.e. omission) to be fraud if the alleged defrauder owed a duty to disclose that information to the party across the bargaining table. *Id.*; *see also Abrams v. Resolution Trust Company*, 1992 WL 137650 (N.D. Ill. 1992). Thus, if GAG is found to have had a duty to disclose the transfers to LaSalle, and failed to disclose the information, it would be liable for fraudulent inducement.

GAG challenges the Bankruptcy court's finding that GAG owed LaSalle a duty to disclose the transfer of inventory by Goldblatt's between its stores. As a preliminary matter, both GAG and LaSalle argue that the duty to disclose is a question of fact subject to the clearly erroneous standard. This is incorrect. The existence of a duty is a question of law (*see Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732 (7th Cir. 1999)), and as such this court reviews this issue *de novo*.

The Seventh Circuit has found that a duty to disclose arises when one party learns of material information without effort or expertise, which the other party would not have been able to obtain without substantial investment of time or effort. *FDIC v. W.R. Grace & Co.,* 877 F.2d 614, 619-20 (7th Cir. 1989). The court gives the example that "if you go to a bank for a loan on your house, and the bank tentatively agrees to make it, and on the day before the loan papers are

to be signed the house is destroyed by a flood and you don't disclose the fact at the signing, then...you are guilty of fraud even if you made no representation that the house was still in existence." *Id.* at 620. In the present case, GAG knew of the inventory transfers from the February stores to the January stores, and that these transfers significantly decreased the value of inventory in the February stores. Although this case is less dramatic than the house destroyed by the flood, the application of the principle is transferable: when there is a significant change in a material provision in a contract, and one party knows of the information without considerable effort, and the other party would not obtain the information without substantial effort, the party with knowledge has the duty to disclose. GAG became aware of the transfer information in the ordinary course of business, with the expenditure of no additional effort or expertise. The Bankruptcy court stated, and the parties do not challenge, that, "the January agreement prohibited transfers of inventory outside the ordinary course except to the extent that such transfers would be listed on an attachment to the January agreement, which attachment never was prepared." GAG's Chief Administrative Officer, Thomas Pabst, agreed that $100,000 fell within the "ordinary course of business" range. However, the amount that was transferred exceeded this amount. GAG knew of the discrepancy between what was stated in the agreement, and the actual transfer amount, but failed to relate and correct the discrepancy. LaSalle had no reason to suspect or investigate this transfer, and to expect LaSalle to question every possible change to the contract terms would require an unreasonable expenditure of effort and time. Under these circumstances, this court agrees with the Bankruptcy court that GAG had a duty to disclose the transfers.

GAG asserts that it had no knowledge as to what LaSalle knew about Goldblatt's inventory. This is not dispositive of whether or not GAG had a duty to disclose. The fact that GAG did not know whether or not LaSalle knew of the transfers does not have bearing on whether or not it had the duty to inform LaSalle.

GAG argues that it had no contractual obligation to make any representations to LaSalle regarding Goldblatt's inventory levels in the January stores. GAG asserts that LaSalle is a third-party, and thus cannot sue GAG for fraud based on an omission because it is not a contracting party. GAG cites *Abrams v. Resolution Trust Company*, where the court found that representations made to a hotel did not constitute misrepresentation to the hotel's investors, a third party. 1992 WL 137650 (N.D. Ill. 1992). The present case is distinguishable from *Abrams* because LaSalle and GAG did enter into a contract–the February Letter Agreement. While LaSalle is a third party beneficiary to the February Agency Agreements, it is a direct party to the February Letter Agreement. In the February Letter Agreement, LaSalle consented to the terms of the February Agency Agreement between Goldblatt's and GAG, and required that any amendments or modifications to the terms be subjected to LaSalle's consent. LaSalle is thus a contracting party with GAG under the Letter Agreements, where a duty to disclose may arise. Further, whereas in *Abrams*, the court found that there was no evidence that the omitted information would detract from the value of the property and cause the investors to change their decision to invest, in the present case, the omitted information is important precisely because the transfers detract from the value of the February stores, and LaSalle has alleged that it would likely have acted differently had it known about the transfer. Thus, *Abrams* is not directly

applicable to the case at hand, and GAG was properly found to have a duty to disclose the transfers to LaSalle.

C. <u>Fiduciary Duty</u>

LaSalle asks this court to review the Bankruptcy court's ruling that GAG did not owe LaSalle a fiduciary duty under the February 14, 2003 Letter Agreement and the February Agency Agreement. LaSalle argues that GAG owed LaSalle fiduciary obligations on two grounds: (1) the Agency Agreements created an agency relationship between GAG, on the one hand, and Goldblatt's and LaSalle on the other, and fiduciary obligations arise out of an agency relationship; and (2) LaSalle was a third party beneficiary, and can enforce fiduciary obligations that GAG owed Goldblatt's.

Under Illinois law, when one party delegates management of its business to another, an agency relationship is created, and where an agency relationship exists, fiduciary obligations arise from that relationship as a matter of law. *Petri v. Gatlin*, 997 F. Supp. 956, 979 (D. Ill. 1997); *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056 (Ill. App. Ct. 1996). The Agency Agreement sets up an agency relationship between GAG and Goldblatt's. LaSalle seems to be arguing that the Agency Agreement also established an agency relationship between GAG and LaSalle. This is incorrect–GAG was not an agent to LaSalle; rather LaSalle was the third party beneficiary of the agency relationship between GAG and Goldblatt's. Thus, to argue that the Agency Agreement created an agency relationship which conferred a fiduciary duty on GAG as an agent to LaSalle is incorrect. GAG was only an agent to Goldblatt's, and its fiduciary duties as an agent is to Goldblatt's as principal.

LaSalle then argues that as a third party beneficiary, it is entitled to enforce the fiduciary obligations that GAG owed Goldblatt's. It is the settled law in Illinois that "if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof." *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (Ill. 1931). However, in the case at hand, LaSalle is not suing for breach of contract, but rather a breach in the fiduciary duty arising from the Agency Agreement. Further, there was no breach of fiduciary duty between GAG and Goldblatt's, the contracting parties of the Agency Agreement, as both parties knew of the transfer. The question is whether GAG owed an independent fiduciary duty to LaSalle. If GAG's fiduciary duty to LaSalle is simply derivative of its duty to Goldblatt's, and there was no breach of duty to Goldblatt's, then LaSalle has no claim. However, if there is an independent fiduciary duty to LaSalle, the third party beneficiary, then LaSalle's argument may prevail.

Under Illinois law, an agent does not owe an independent fiduciary duty to a third party beneficiary in an escrow agreement. Someone who is not party or privy to an escrow agreement cannot be sued for breaching a fiduciary duty arising out of the agreement. *Indep. Trust Corp. v. Fid. Nat'l Title Ins. Co.*, 2007 U.S. Dist. LEXIS 23898 (D. Ill. 2007). The fiduciary duty rule relates only to parties to the escrow agreement and is therefore not supportive of a claim under a third-party beneficiary status. *Bescor, Inc. v. Chicago Title & Trust Co.*, 446 N.E.2d 1209 (Ill. App. Ct. 1983). In the escrow case, an agent holds funds for the principal, paying the third party beneficiary according to the terms of the contract. Similarly, in the present case, under the Agency Agreement, GAG holds property for Goldblatt's, paying LaSalle (the third party beneficiary) according to the terms of the Agency Agreement. Under these circumstances, where

-11-

LaSalle is not a party to the agreement, GAG does not independently owe LaSalle a fiduciary duty arising out of the Agency Agreement. Because GAG did not violate any fiduciary duty to Goldblatt's, there is no derivative claim.

   D. Proof of Damages

LaSalle challenges the Bankruptcy court's judgment in favor of GAG and against LaSalle for the "Overfunded Amount" in light of its finding that GAG fraudulently induced LaSalle Bank to enter into the February 14, 2003 Letter Agreement. The Bankruptcy court found that despite GAG's failure to disclose, LaSalle did not sufficiently provide proof of damages to warrant a remedy. Specifically, the Bankruptcy court noted that "there was failure to show what would have happened in the absence of the loan, the alternative method it would have employed to liquidate its collateral, and whether that alternative method would have produced greater recovery for LaSalle than the liquidation that actually took place." Tr. 2/26/04 at 6.

LaSalle claims that as the defendant to GAG's cross claim, it was not required to prove damages as it was not the plaintiff seeking to recover damages. In *FDIC v. W.R. Grace & Co.,* the Seventh Circuit concluded that the plaintiff, the party seeking recovery, did not provide sufficient proof of damages, and thus could not recover. 877 F.2d 614, 619-20 (7th Cir. 1989). In the present case, LaSalle is not the plaintiff, the party seeking to recover. GAG has filed the cross-claim, and LaSalle puts forth the claim of fraudulent inducement as an affirmative defense, seeking to bar the enforcement of the February Agreement and payment of the overfunded amount. The fact that LaSalle may benefit if it prevails on its affirmative defense does not confer on it an obligation to prove damages. In *Chicago Park Dist. v. Chicago & North Western Transp. Co.*, the court barred the plaintiff from enforcing a contract where the defendant entered

into the contract based on the plaintiff's fraudulent activity. 240 Ill. App. 3d 839 (Ill. App. Ct. 1992). No proof of damages by the defendant was required. The burden of proof of damages is on the party seeking recovery–in this case, GAG, not LaSalle. The fact that LaSalle failed to provide proof of damage is not a material failing, where, as here, fraudulent inducement is an affirmative defense, not a basis for recovery. This court reverses the Bankruptcy court's finding that LaSalle was required to prove specific damages.

Further, *Chicago Park Dist. v. Chicago & North Western Transp. Co.* holds that the finding of fraudulent inducement bars GAG from enforcing the February Letter Agreement and February Agency Agreement, requiring LaSalle to refund the "overfunded amount." For reasons that are unclear, the Bankruptcy court granted relief in favor of GAG against LaSalle, despite the Bankruptcy court's conclusion that GAG was guilty of fraudulent inducement. That conclusion alone bars GAG from a remedy for breach of the agreement. *See Chicago Park Dist. v. Chicago & North Western Transp. Co.*, 240 Ill. App. 3d 839 (Ill. App. Ct. 1992). E. <u>GAG's Profit Setoff</u>

Because this court reversed on the payment of the "overfunded amount," it is not necessary to address LaSalle's alternative argument that it should be credited with the $377,303.10 setoff.

F. <u>GAG as Appellant</u>

Finally, LaSalle argues that GAG does not have standing to appeal because it was not an aggrieved party, injured by the terms of the judgement. Citing *Grinnell Mut. Reinsurance Co. v. Reinke,* 43 F.3d 1152 (7th Cir. 1995), La Salle argues that because the Bankruptcy Court found in favor of GAG, GAG cannot show that the judgment injured it and is therefore not a proper appellant. GAG argues that because the Bankruptcy court found that GAG had a duty to disclose

to LaSalle, it denied GAG its claim for the prejudgment interest. The prejudgment interest claim is a legal relief to GAG. The judgment of the Bankruptcy court that denies this relief to GAG is sufficient to allow GAG to bring an appeal. This is distinguishable from *Grinnell,* where the victims of a tort case challenged the court's decision not to require Grinnell to defend the tort litigation. Grinnell, an insurance agency, decided to pay off the victims, instead of defend itself in a litigation. The lower court allowed Grinnell to elect not to defend, and the victims appealed, asking the Seventh Circuit to require Grinnell to defend. The Seventh Circuit found that the victims were not appropriate appellants, because they suffered no injury by Grinnell's choice not to defend. Instead, they benefitted from the payment they received from Grinnell. The Seventh Circuit noted that, "Their interest lies in enforcing the indemnity provisions of the insurance contract, not the defense provisions." 43 F.3d at 1153. This fact pattern is different than what the present case presents. In the case at hand, GAG claims a legal interest in obtaining the prejudgment interest against LaSalle. This prejudgment interest amount directly benefits GAG, and the loss of which constitutes a legal injury. As such, GAG is an appropriate appellant.

**Conclusion**

For the reasons stated above, this court reverses the Bankruptcy court's order that LaSalle must pay the "overfunded amount." LaSalle, as defendant to the cross claim, is not required to prove specific damages in bringing an affirmative defense. The finding of fraudulent inducement bars enforcement of the February Letter Agreement against LaSalle. Accordingly, this court reverses Paragraph 3 of the Bankruptcy Court's Order and Judgment, requiring LaSalle to pay the

"overfunded amount." This matter is remanded to the Bankruptcy court for further proceedings consistent with the terms of this opinion and order.

        Enter:

        /s/ David H. Coar
        _____
        David H. Coar
        United States District Judge

Dated: **October 10, 2007**